The next case today is Trislin A. Williams v. Kawasaki Motors Corp., U.S.A. Appeal number 21-1442. Attorney Butler, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honors. My name is Terrence Butler. I represent the appellant. The appellant is actually the head of the estate. The underlying appellant was a man riding a motorcycle in 2013, who, not uncommonly after a very severe burn, committed suicide in the fifth anniversary of the accident because of his severe burns. So it is now his father who has the estate that is pursuing with the accident. We are on appeal from what we believe that the trial judge, Judge Masteroni, abused his discretion in excluding our expert. We have a number of experts. The expert he excluded for this motion of summer adjudication was expert Dr. David Rondinon, who is a Ph.D. from Berkeley University and actually teaches weld failure at Berkeley University. The underlying crux of this is a motorcycle, Your Honors, has a frame that protects the gas tank. I'm a farm boy, and the frame looks very much like a giant horse collar. When a motorcyclist sits on the bike, his or her left or right knee are sitting on the sides of the frame. The frame is welded just above the rider's left knee and just forward of the rider's right knee to form the horse collar frame protecting the bike. In this incident, right in front of the federal court in Springfield, Massachusetts, interestingly enough, the motorcyclist was proceeding and a jeep turned in front, made a U-turn in front of the motorcyclist and using street talk, the motorcyclist T-boned the jeep because the jeep turned in front of him too quickly. There's questions about the speed, but both experts have the speed. Mr. Butler, I think you can assume we have considerable familiarity with the facts. We've read the briefs and the like. It would be helpful to me if you would address your issue towards causation. As I understand it, your expert has opined and testified that the weld on the right side was, in several respects, not up to snuff. It was thinner, the way it was applied was incorrect, and perhaps more. Let's assume that that was sufficient to establish that there was a problem with that right side weld. The question I have, though, is your expert seems to have repeatedly said that he cannot say whether the forces would have been enough to break a proper weld. I'm familiar with that phrase, Your Honor. Actually, I'll pull it out of the deposition. I think that's a mischaracterization of what he said. The question was, you can't tell me whether the forces were high enough that they would have fractured the best weld in the world. That phrase, exactly what it means, is if you had the best weld in the world, are there forces high enough to fracture it? The response is true. He said, I can't say that. But what I can say, and then he went on to point out, that that question, with all due respect, Judge Gallaudet, is a red herring. It produces something that is somewhat irrelevant to our fact situation. Let's talk about an ordinary herring, not a red herring. Where in the summary judgment record is there expert testimony from which a reasonable jury could conclude that if this weld were a different weld, different than the weld on the machine that your expert examined, this accident probably would not have occurred. This gas tank probably would not have ruptured. Your Honor, the weld for the frame, in a sense, if you can imagine, is an oval, approximately 12 inches around on both sides, and that there was a weld on the left and a weld on the right. No, no, but I asked you a very specific question. I asked you to identify a place in the record where there was evidence, summary judgment evidence, of an opinion, an expert opinion on causation. Causation to me in this context means, if this defect did not exist, this failure would not have occurred, this rupture of the gas tank, and therefore the accident would not have occurred. Again, there's a left weld and a right weld. The left weld, which is 12 inches around, has materials called weld, by the way. I'm sure you know WLD. There was adequate weld on the left. There was inadequate weld on the right. The left held in this T-bone accident. But the left and the right were in different positions. And are you relying solely on some sort of inference that a layperson could draw? Are you telling me there is no expert testimony of causation? No, not at all, Your Honor. I'm saying that Dr. Rondinon, who teaches weld failure, said that given the forces estimated by both sides, which are between 35 and 50 miles an hour, the weld on the left held. The weld on the right did not hold very specifically because it was a thinner weld. And actually, in some places, the 12 inches, there was no weld at all. Dr. Rondinon also went and looked at four other motorcycles, exemplars. And the judge said there was one, there was four, and found that the welds in all four of those were identical on the left and right. There was none lacking. Mr. Butler, Mr. Butler, your case is hanging on this, so you've really got to point us to something in the record. Because you've made some pretty good arguments that there's enough there to establish a defect or a deficiency of some type. But what we're really asking you is tell us specifically in the record what establishes that the gas tank would not have been ruptured had the weld on the right been done properly. And what I hear you say is your expert said at one point that the weld on the left was done properly and it did not rupture. And so you want us to infer from that that the weld on the right wouldn't have ruptured if it had been done the same way as the weld on the left. That poses the question, though your expert never said that. So I take it you want us to say that a jury on its own without any expertise could reconstruct this accident in a way and conclude that it would have held had it been done right on the right. On page 126 of Dr. Rondinon's deposition, from line 17 to 19, Dr. Rondinon says, and I quote from the deposition, I can say that the subject weld was clearly improper and substandard simply by the method in which it failed. To point out specifically in the record, I apologize, I'm familiar with the record, but the exact way he phrases it, I was at the deposition, I was at the inspections, Dr. Rondinon made it extremely clear in his opinion that the right weld failed because it was insufficient and substandard. And I'm not sure exactly what the justices are asking. What we're asking is the next question, all right? Where is it that he says, and the right weld failure caused the gas tank to rupture? Or, and the gas tank would not have ruptured but for the right weld failure? That's the testimony I haven't been able to find, and I think I've looked fairly carefully. Justice, I think both sides, and in the very few minutes and seconds I have here, maybe Mr. Durney's arguing, and I have a rebuttal, I'll look for it, but both sides, I think, agree that what happened is the weld failed on the right side, and the frame, or very small part of the frame, came in and ruptured the gas tank. I don't think anyone disagrees with that factual situation. Mr. Butler, when you're back at council table, you said you were at the deposition. Look at page 190 of the deposition, because that's what prompted my inquiry here. The question was, you told me earlier in this deposition that you can't come up with an opinion as to what force a proper weld would fracture at that location on this frame. Answer, I have not done that calculation. Question, so don't you, and we also agreed that you can't tell me whether the forces seen by the weld in this accident exceeded the forces necessary to fracture a proper weld. Right. Answer, that's still true. So that's what prompted my inquiry, and my specific question to you is, am I reading that wrong, or is there something else in the deposition or the report that would put this in a whole different context, or the like, or do something? But I think you've got to explain that. Well, respectfully, I think perhaps that's being a little bit misunderstood. What was asked then is, if there were a proper weld, what force would cause the proper weld to fail? And Dr. Rondinon said he has done no calculation, nor could there be a calculation, if there were a proper weld, of what the force would be for it to fail. That's the exact question. Well, that's actually not what it says. It says you can't tell me whether the forces seen by the weld in this accident exceeded the forces necessary to fracture a proper weld. Well, with all due respect, when I read that, and I studied that, what Mr. Durney was asking him is up on the left side, where the weld held, is on the left side, where there was a good weld, what forces would have caused that when he says a proper weld? I understand when you read it quickly, it may sound like something else, but what Mr. Durney was asking is not where the weld failed on the right side. Everyone agrees. No one disagrees. We had 12 experts at the inspection. No one disagrees the right side failed and the right side punctured the tank. What Mr. Durney was asking is, what were the forces necessary to cause a proper weld to fail? Dr. Rondinon said that's not what he was asked to do. He was only asked to look at the right side where it did fail, not a proper weld. With all due respect, I believe that's what that says. That's time. Thank you. Judge, before we proceed, I just wanted to say that I don't believe Mr. Butler had asked for rebuttal, but he mentioned coming back. I'm sorry, I did ask for two minutes, I thought. I beg your pardon if I did not. I understood that Mr. Butler would be given rebuttal time. Yes, Judge. Thank you. Mr. Butler, at this time, if you could please mute your audio and video, and we'll ask you back for rebuttal after. Thank you. And then, Attorney Durney, if you could unmute your audio and video at this time and introduce yourself on the record to begin. Yes. Good morning, Your Honors. Peter Durney, again, on behalf of the Kawasaki Defendants and Apple East. I would like to go briefly just to something that was discussed quite a bit at length with Judge Calleja a second ago and also with Judge Celia. And that has to do with this testimony by Mr. Rondinone. And I took the deposition out in California with respect to whether or not, in his vision of what a perfect well might look like, whether it would have made any difference in this accident. And I think the judges are correct that it was mentioned multiple times that I approached it in different ways as best I could at the deposition. Mr. Durney, you are right to focus on causation. But the first question had to do with a perfect well. However, Judge Calleja then pointed to other parts of the record that weren't about a perfect well, just a well that was adequate for its purposes. So there are three different portions of the deposition transcript, and there is the report. Unfortunately, the trial judge did not separately analyze both the claim of inadequate manufacture and the claim of causation. Focus your attention, please, on the claim of causation. What was in the expert report and what was in the deposition? Yes, Your Honor. I was intending to direct the court to the appendix, page 410, which is page 200 of the deposition of Mr. Rondinone. And I asked these questions. And just by way of background, Your Honors, there was a 14% difference between the well that he spoke about and another well that he had looked at, a 14% volume difference. I asked him about that specifically. When you say it's smaller than what you saw in the exemplar, you are referring to the 2008. That's right. And by smaller, what did you mean? Answer, meaning that there was less well material present. Question, I think you found, and correct me if I'm wrong, the additional material was somewhere in the neighborhood of 14% more additional material between what you believe existed on the Williams motorcycle and the exemplar. Answer, that is about correct. I think that's about correct. And this is the key question and answer. Would that have prevented it from breaking in a collision of this magnitude? The answer is you don't know, right? Answer, exactly. Your problem with that, though, is that's only addressing one of the deficiencies that he pointed to, which is the 14% less material. He also opined that not only was there less material, but that it was not applied properly. So this language here doesn't quite get you where you need to go. If I can touch on just for a second on the issue of the speed and the dynamics in this accident, there are all sorts of discussions in the motion for summary judgment papers, in the expert reports. In our expert report, Mr. Todd Hoover goes through an analysis. And there are also the police reports and the statements that were part of those police reports and the charges brought against the two motorcyclists. So at the end of the day, the reconstruction that was done by our people puts the speed prior to impact somewhere in the neighborhood of 74 miles an hour before breaking and then at impact at a minimum 45 to 48 miles per hour. The reason I think that that's important to consider is that that is anything but a benign accident. In fact, it's characterized by our expert as a severe high-speed, high-energy impact crash. Now, when you have an impact crash like that, you have dynamics that are occurring nonlinearly. In other words, you have a tire which is made of rubber. It's contacting the car. It's bending. Things are moving. There's the weight of the operator on the machine, and things are moving in different directions relative to one another.  It was completely without any idea as to how the forces were directed in the course of this crash to the various components of the motorcycle. Certainly, Your Honor. He said elsewhere in his deposition precisely the opposite of what you just said. He said elsewhere in his deposition that because the weld on the right gave way, the weld on the left was likely subjected to greater forces. And when it broke, it fractured laterally rather than lengthwise. So, why isn't that contrary to what you just said when you just told us he didn't opine concerning the relative forces? And that's a good question, but the answer to it is he had no basis for that opinion. He couldn't get there. It's Ipsi Dixit, Your Honor. He cannot, without doing the analysis necessary to ascertain the forces on the various components, over the course of this accident, come to a conclusion that anything would break before anything else. He just can't get there. He's looking as a Monday morning quarterback and trying to figure out what broke first. On that point, rather than it being a sufficiency error, you're essentially saying it's a Daubert deficiency. Exactly, Your Honor. I think this case is perfectly situated both from a Rule 702 issue and Daubert in that his methodology is not reliable. In fact, by his own admission, he didn't do things that would typically be done in a case like this where you would have a reconstruction expert come in, reconstruct the forces, maybe the principal direction of force. This court is familiar, I am sure, with the concept of Delta V or the change in velocity. This gentleman does not know how to reconstruct accidents. He doesn't know what the Delta V would have been in this accident. Mr. Hoover, on the other hand, gave us a Delta V. And essentially, when you're hitting a vehicle like this broadside, there's some crush on the car, there's crush on the motorcycle, but the Delta V is going to be in the 40s. That is a significant crash. You cannot simply say, after the fact, I found this particular component cracked. And by the way, there were multiple components cracked. There was significant damage throughout that vehicle. And ergo, that cracked first, and as a consequence of that, the other components must have seen less or greater force over the course of the rest of the accident. That's just not the way it works. You cannot make that leap of faith and say this cracked first, it should not have cracked, but for the fact that it cracked, it would not have caused this release of fuel. He hasn't even come close to doing the necessary work. In fact, he said he does not need to reconstruct the accident, just as he didn't need to review to come forward with a manufacturing defect, which Mr. Butler told the judge at the hearing was the basis of their theory. He has not even made any effort to review the specifications so that he could go to the next step and say that there was a departure from the specifications that rendered this particular well or this particular motorcycle out of spec. None of that was done by this expert. If I may, Your Honor, there are multiple things that we agree about. For example, the review of the record in the standard, we agree that it's an abuse of discretion. We agree that the court would take a de novo look at it. I don't think there's any doubt that we agree that an expert should be precluded if he bases his entire theory upon Epstein-Dixon. What this gentleman did was just not sufficient to get him where he wanted to go. To his credit, he was candid enough in his deposition testimony to agree with me that that was the case. Now, he put it in terms such as I wasn't asked to do this or I wasn't asked to do that, but at the end of the day, he understood clearly that he could not carry the water that they asked him to carry and get them all the way over the finish line. I do not know if I have additional time, but this court has obviously read the record very thoroughly. There are statements in there. For example, Rondinone at 1160 through 1165, he says there are striking admissions from my perspective. For example, it is true that I did not review the design drawings and specifications for the motorcycle. However, that is not required. I would ask this court, how could that possibly be if this gentleman wished to present evidence to a jury that he thought would help them arrive at a decision? Thank you very much. Thank you. Attorney Durney, thank you. Please mute your audio and video at this time. And, Attorney Butler, please reintroduce yourself on the record for rebuttal. Terrence Butler in rebuttal for the appellate, the Junior Williams estate. Very briefly, the speed, everyone agrees the speed is somewhere between 35 and 45 miles an hour on impact. There were no charges maintained against anyone involved in this. Springfield Motorsports has been left out of Mr. Durney's argument. Springfield Motorsports is a Kawasaki dealer there in Springfield. Also, the state of Massachusetts recognizes it as two certified motorcycles. It looked at this motorcycle, I think, a few weeks before the accident on something unrelated. They didn't find all these cracks and defects and problems. Experts at Springfield Motorsports that Mr. Durney refers to. Basically, we come down to three types of welds. There is a perfect weld, but I don't know what that means. There's a sufficient weld, meaning at a reasonable speed, since defense experts admit the number one accident they have with motorcycles is like this one, someone making a turn in front of them. And then there is sufficient and insufficient. The court asked me where in the record did Dr. Rodnanon state this. I'm reading from the record. This is page 21 of Dr. Rodnanon's opinions. In my few seconds, it's a number of paragraphs, but I'll just read one of them. It says the right side frame weld on the subject motorcycle was defective. It lacked material relatively to exemplar welds and possessed pre-cracked fractures that further reduced its strength. Farther down, he says that the failure of this weld is what caused the weld to crack and then allowed part of the frame to come in and rip open the motorcycle. Paradoxically, this is not what he said, but I said, the frame is supposed to protect the tank so there won't be a rupture in a fire, and in this thing, God bless, the frame ripped into the tank and caused it. Dr. Rodnanon clearly is a professor who teaches welding at one of the finest universities in the world. Thank you for your attendance, and let me compliment you on your excellent reading of the record. Judge Lynch, I wonder if I might address one point that was raised. Yes. This is Mr. Durney again. I beg your pardon. It will take just a moment. My understanding, and I think the record would back me up on this, is that the charge was negligent operation of a motor vehicle. The charges were brought against both motorcyclists. In my understanding, because we had the ballot to try and get a recording of the outward plea, is that a plea was made on behalf of Mr. Williams. Thank you. Okay. Counsel, you have both argued well on what is important in the case. Let's end the argument at this point. Thank you very much. It was helpful to the court. We are going to take a brief recess before we hear the argument in the next case. God bless everyone. Stay safe. Thank you, Judge. That concludes our argument in this case. Attorney Butler and Attorney Durney should disconnect from the hearing at this time.